UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AMYIAH COHOON, a minor, by and through her parents and legal guardians, RICHARD COHOON and ANGELA COHOON,

    Plaintiff,

v.

JOSEPH KONRATH, in his personal and official capacity as Sheriff of Marquette County, Wisconsin, and

CAMERON KLUMP, in his personal and official capacity as Patrol Sergeant for the Marquette County Sheriff's Office,

    Defendants.

Case No. 20-CV-620

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

---

Rick Esenberg (SBN 1005622)
Luke N. Berg (SBN 1095644)
  *Counsel of Record*
Anthony F. LoCoco (SBN 1101773)
Lucas T. Vebber (SBN 1067543)

Wisconsin Institute for Law & Liberty
330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
Phone: (414) 727-7361
Fax: (414) 727-6385
luke@will-law.org

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT........................................................................................................................8

    I.   Defendants Blatantly Violated Plaintiff's First Amendment Rights ..................9

    II.  Defendants' Prior Threats and Sheriff Konrath's Refusal to Acknowledge the First Amendment Violation Continue to Inhibit Amyiah's Speech..........................................12

CONCLUSION...................................................................................................................13

# INTRODUCTION

The First Amendment's protection of speech, especially online speech, is as vital as ever during the ongoing COVID-19 pandemic. The unprecedented stay-at-home orders throughout the nation have made social media one of the few outlets people have to communicate with friends and family. This case is about preserving the important right to share experiences with one another during this difficult time.

Amyiah Cohoon, a high school student, had a recent scare with COVID-19 and posted about her experience on Instagram. A few days later, a deputy sheriff showed up at her door and demanded that she remove her post or be cited for disorderly conduct, arrested, and jailed. The offending post? A picture of Amyiah, while she was hospitalized for what doctors told her was likely COVID-19, with the caption, "I am still on breathing treatment but have beaten the coronavirus. Stay home and be safe." The sheriff's demand was a blatant First Amendment violation.

Moreover, the chilling effect on Amyiah's speech is ongoing. In response to the threats from the sheriff, Amyiah immediately removed her posts, but later discovered that the administrator of her school district had told all her classmates and teachers that her posts were not true and were a "foolish means to get attention." Amyiah would like to respond to these accusations but based upon the sheriff's previous threat to arrest her she is afraid to do so. Undersigned counsel sent a letter to Sheriff Konrath on Amyiah's behalf asking him to acknowledge the First Amendment violation and withdraw the threat, but he retained counsel and refused her request. As a result, Amyiah feels unable to respond to the statements about her or to share further about her experience with her friends and family. She seeks a preliminary injunction so that she does not

need to fear that another deputy will come to her home and threaten to arrest her if she posts again about her experience.

## BACKGROUND

Amyiah Cohoon is a sophomore at Westfield Area High School in Westfield, Wisconsin. Amyiah Cohoon Decl. ¶ 1. Between March 7 and March 15, Amyiah went on a spring break trip to Disney World and Universal Studios in Florida with her high school's band class. Amyiah Cohoon Decl. ¶ 2.

While Amyiah and her classmates were in Florida, the country began shutting down due to the COVID-19 pandemic. On March 9, Florida Governor Ron DeSantis declared a public health emergency for the State of Florida. *See* Executive Order Number 20-52, State of Florida, Office of the Governor.[1] On March 12, Universal Orlando Resort in Florida announced that its theme parks would close on March 15 due to COVID-19. *See* Universal Orlando Resort Update, (Mar. 12, 2020).[2] Also on March 12, Wisconsin Governor Tony Evers declared a public health emergency for the State of Wisconsin. *See* Executive Order #72, Relating to a Proclamation Declaring a Health Emergency in Response to the COVID-19 Coronavirus, State of Wisconsin, Office of the Governor.[3] On March 13, the Wisconsin Department of Health Services, at the Governor's direction, ordered all Wisconsin Schools to close beginning March 18. *See* Order for Statewide School Closure, Wisconsin Department of Health Services.[4] Amyiah and the others on

---

[1] https://www.flgov.com/wp-content/uploads/2020/03/EO-20-52.pdf

[2] https://www.facebook.com/UniversalOrlandoResort/photos/a.208747882851/10157344068117852/?type=3&theater

[3] https://evers.wi.gov/Documents/EO/EO072-DeclaringHealthEmergencyCOVID-19.pdf

[4] https://evers.wi.gov/Documents/EO/SignedSchoolClosure.pdf

the spring break trip returned home on March 15, earlier than planned, due to the closures in Florida. Amyiah Cohoon Decl. ¶ 3.

Four or five days after she returned, Amyiah began feeling ill. Amyiah Cohoon Decl. ¶ 4. Her symptoms included a fever and dry cough, symptoms that are consistent with COVID-19. Amyiah Cohoon Decl. ¶ 4. On March 22, Amyiah began having difficulty breathing, so her mother took her to the emergency room at Divine Savior Hospital in Portage, Wisconsin. Amyiah Cohoon Decl. ¶ 5; Angela Cohoon Decl. ¶ 5. The doctors there evaluated Amyiah and concluded that her symptoms matched those of COVID-19. Amyiah Cohoon Decl. ¶ 6; Angela Cohoon Decl. ¶ 6. They told her that they could not test her, however, due to the testing criteria at the time, so they sent Amyiah home with an inhaler and instructions to strictly self-quarantine and to return if her condition deteriorated. Amyiah Cohoon Decl. ¶ 6; Angela Cohoon Decl. ¶ 6. The doctors also told Mr. and Mrs. Cohoon to self-quarantine for 14 days. Rick Cohoon Decl. ¶ 6; Angela Cohoon Decl. ¶ 6. The discharge order diagnosed Amyiah with an "[a]cute upper respiratory infection, unspecified." Compl. Ex. 1. The doctors also gave the Cohoons a work release form, which repeated what they were told orally, that "[Amyiah] has symptoms consistent with COVID-19." Compl. Ex. 2. Amyiah was then self-quarantined at home from March 22 until March 25. Amyiah Cohoon Decl. ¶ 8.

On March 25, Amyiah's symptoms worsened, including significant difficulty breathing, so Mrs. Cohoon took her back to the emergency room at Divine Savior Hospital. Amyiah Cohoon Decl. ¶ 9; Angela Cohoon Decl. ¶ 9. Divine Savior redirected Amyiah to the UW Children's Hospital in Madison and took her there via ambulance. Amyiah Cohoon Decl. ¶ 9; Angela Cohoon Decl. ¶ 9. Amyiah was tested for COVID-19 in the evening of March 25 and received the results the following morning. Amyiah Cohoon Decl. ¶ 11; Angela Cohoon Decl. ¶ 11. The test came

back negative, but the doctors told the Cohoons that the test was likely a false negative and that Amyiah still likely had COVID-19 and had simply missed the window for testing positive. Amyiah Cohoon Decl. ¶ 12; Angela Cohoon Decl. ¶ 12. Consistent with what the doctors told the Cohoons, health experts are pointing out that "nearly one in three patients who are infected [with COVID-19] are nevertheless getting a negative test result." *See* Christopher Weaver, *Questions About Accuracy of Coronavirus Tests Sow Worry*, Wall Street Journal (Apr. 2, 2020).[5] Based on what the doctors told them, Amyiah and her parents believed and still believe that her symptoms were caused by COVID-19. Amyiah Cohoon Decl. ¶ 13; Rick Cohoon Decl. ¶ 11; Angela Cohoon Decl. ¶ 13. Amyiah returned home from the hospital in Madison on March 26. Amyiah Cohoon Decl. ¶ 14; Angela Cohoon Decl. ¶ 14.

The Cohoons twice attempted to notify the school about Amyiah's condition. After they left the hospital on March 22, Mrs. Cohoon called the band teacher in charge of the spring break trip to let her know that Amyiah may have contracted COVID-19 so the school could warn other families with students on the trip. Angela Cohoon Decl. ¶ 7. Mrs. Cohoon was unable to reach the teacher, so she left a voicemail but never heard back. Angela Cohoon Decl. ¶ 7. On March 25, while at the hospital in Madison, Mrs. Cohoon received a call from the principal of Westfield High School on an unrelated matter. Angela Cohoon Decl. ¶ 10. During that call, Mrs. Cohoon told the principal about Amyiah's situation, including that she had left a voicemail for the band teacher, and once again suggested that the school may wish to notify other parents with students on the Florida spring break trip. Angela Cohoon Decl. ¶ 10. The principal told Mrs. Cohoon that he would

---

[5] https://www.wsj.com/articles/questions-about-accuracy-of-coronavirus-tests-sow-worry-11585836001

follow up, but the Cohoons never heard back from either the principal or the teacher. Angela Cohoon Decl. ¶ 10.

Amyiah, wanting to update her friends about her condition, posted three updates to her Instagram account during this experience. After she returned home from her first visit to Divine Savior on March 22, Amyiah posted a picture of herself from the spring break trip with the caption, "Hey guys… sorry I've been on a long break.. I wont be back for a while longer due to me no[w] having the COVID-19 virus… I don't want the attention its just the truth… I am now in self quarantine and am not allow[e]d to leave my room and have an inhaler since they said to go home… best of wishes. love you guys." Amyiah Cohoon Decl. ¶ 7; Compl. Ex. 3. On March 25, Amyiah posted a short update to Instagram that she was "in the ER might need to stay…" Amyiah Cohoon Decl. ¶ 10. Finally, on March 26, after she returned home from her night at the hospital in Madison, Amyiah posted again to Instagram, this time a picture of herself with an oxygen mask on her face, captioned, "I am finally home after being hospitalized for a day and a half. I am still on breathing treatment but have beaten the coronavirus. Stay home and be safe." Amyiah Cohoon Decl. ¶ 15; Compl. Ex. 4.

On March 27, a day after Amyiah returned from the hospital, Defendant Patrol Sergeant Cameron Klump from the Marquette County Sheriff's office came to the Cohoons' home. Amyiah Cohoon Decl. ¶ 16. Amyiah answered the door, and Sergeant Klump said he needed to speak with her father. Amyiah Cohoon Decl. ¶ 16. After Mr. Cohoon came outside, Sergeant Klump explained that the school "superintendent" had complained to Defendant Sheriff Joseph Konrath about one of Amyiah's Instagram posts. Rick Cohoon Decl. ¶ 14. Sergeant Klump showed Mr. Cohoon a cropped screenshot of Amyiah's final Instagram post. Rick Cohoon Decl. ¶ 14; Compl. Ex. 5. Sergeant Klump stated that he had direct orders from Sheriff Konrath to demand that Amyiah

delete this post, and, if she did not, to cite Amyiah and/or her parents for disorderly conduct and to "start taking people to jail." Rick Cohoon Decl. ¶ 15. Sergeant Klump's incident report tells the same story, stating that "Sheriff Konrath advised me he wished for me to respond to the residence and have the post removed from her social media," Compl Ex. 6 at 4, and that Klump "advise[d] Richard [Cohoon] that if they were not willing to take the post down, that there would be the possibility of a County Ordinance Disorderly Conduct or being arrested for Disorderly Conduct," Compl. Ex. 6 at 5.

Sergeant Klump explained that Sheriff Konrath wanted the post removed because there were no *confirmed* cases of COVID-19 in the county at that time. Rick Cohoon Decl. ¶ 16. But neither Klump, nor Konrath, nor anyone from the school district had contacted Amyiah or the Cohoons to discuss Amyiah's symptoms or to learn what the doctors who treated Amyiah had told the Cohoons. Rick Cohoon Decl. ¶ 24; Angela Cohoon Decl. ¶ 15. Mr. Cohoon offered to show Sergeant Klump the documents they received from the doctors at Divine Savior regarding Amyiah's condition, but Sergeant Klump responded that he was not there to gather information but to complete Sheriff's Konrath's orders. Rick Cohoon Decl. ¶ 17.

Mr. Cohoon told Sergeant Klump that he and Sheriff Konrath had no right to demand that Amyiah remove her Instagram post, that he would refuse the order if it were his post, but that he would allow Amyiah to decide for herself. Rick Cohoon Decl. ¶ 18. Mr. Cohoon then called Amyiah outside and explained that Sergeant Klump was going to ask her to remove an Instagram post. Amyiah Cohoon Decl. ¶ 17; Rick Cohoon Decl. ¶ 19. He told Amyiah she did not have to remove it if she did not want to, but that it was up to her. Amyiah Cohoon Decl. ¶ 17; Rick Cohoon Decl. ¶ 19. The Officer then showed Amyiah a screenshot of the post and stated he had direct orders to issue citations and arrest people if she did not remove the post. Amyiah Cohoon Decl.

¶ 18; Rick Cohoon Decl. ¶ 19. Out of fear that Sergeant Klump would follow through on his threat to arrest and jail her or her parents, Amyiah agreed to delete the post and showed Sergeant Klump her Instagram account on her phone as proof that she had removed it. Amyiah Cohoon Decl. ¶ 19; Rick Cohoon Decl. ¶ 20. Sergeant Klump then left the Cohoons' home. Amyiah Cohoon Decl. ¶ 20; Rick Cohoon Decl. ¶ 21. After Sergeant Klump left, out of an abundance of caution and fear, Amyiah also deleted her first Instagram post. Amyiah Cohoon Decl. ¶ 21; Rick Cohoon Decl. ¶ 22.

Later that evening, the Cohoons discovered that, earlier in the day, Westfield District Administrator Bob Meicher had sent a news update to families in the school district that included a statement about Amyiah's posts. Rick Cohoon Decl. ¶ 23; Compl. Ex. 7. The update read:

> It was brought to my attention today that there was a rumor floating out there that one of our students contracted Covid-19 while on the band trip to Florida two weeks ago. Let me assure you there is NO truth to this. This was a foolish means to get attention and the source of the rumor has been addressed. This rumor had caught the attention of our Public Health Department and she was involved in putting a stop to this nonsense. In times like this, the last thing we need out there is misinformation. I asked her to prepare a short statement for the purpose of this update. I've pasted it below.

Compl. Ex. 7. Amyiah is upset about this post by the school district and concerned about the effect this post might have on her friends and teachers, but she is afraid to respond to it because of the previous threat by the Sheriff. Amyiah Cohoon Decl. ¶¶ 24–25.

Sheriff Konrath's and Sergeant Klump's threats to cite and arrest Amyiah for posting about her experience are especially troubling in light of Meicher's public statements accusing Amyiah of not being truthful and engaging in "a foolish means to get attention." With the threats from law enforcement looming over her head, Amyiah has felt unable to respond on social media to Meicher's allegations, and she is now afraid of returning to school due to what her classmates and teachers will think about her. Amyiah Cohoon Decl. ¶¶ 23–24. Amyiah wishes to continue to post

about her scare with COVID-19 and her recovery, and to address Meicher's statements about her, but she is afraid to do so. Amyiah Cohoon Decl. ¶¶ 24–25.

On April 3, undersigned counsel sent a letter to Sheriff Konrath on the Cohoons' behalf explaining that Sergeant Klump's and his actions violated Amyiah's First Amendment rights. Compl. Ex. 8. The letter asked Sheriff Konrath to acknowledge the violation and to provide written assurance that the Marquette County Sheriff's Office will not cite, arrest, or jail Amyiah or her parents for future, similar speech about Amyiah's experience. Compl. Ex. 8. But Sheriff Konrath has refused to acknowledge the violation or provide any assurance to the Cohoons. Instead, he hired counsel and suggested in an email that Amyiah's speech was not protected by the First Amendment, but was the equivalent of "screaming fire in a crowded movie theater." Compl. Ex. 9 at 1. The *only* thing Sheriff Konrath offered the Cohoons was a letter stating that "his Department's investigation into [Amyiah's prior posts] is complete," Compl. Ex. 9 at 1, but of course, the investigation is closed because Amyiah did exactly what Defendants Konrath and Klump unlawfully demanded and deleted her posts. Given Defendants' prior threats and Sheriff Konrath's unwillingness to acknowledge the First Amendment violation, Amyiah reasonably fears that another deputy may show up at her door if she posts anything in the future about her experience or responds directly to Meicher's accusations. Amyiah Cohoon Decl. ¶¶ 24–27.

## ARGUMENT

To obtain a preliminary injunction, a plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In First Amendment cases, however, courts have recognized that "[t]he loss of First Amendment freedoms is presumed to constitute an

irreparable injury" and that "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Thus, the likelihood of success "is usually the decisive factor," *Wisconsin Right To Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014), and the analysis often "begins and ends with … the merits." *Higher Soc'y of Indiana v. Tippecanoe Cty., Indiana*, 858 F.3d 1113, 1116–18 (7th Cir. 2017) (citation omitted).

A preliminary injunction is warranted here because Defendants have blatantly violated Amyiah's First Amendment rights, and their threats of citation, arrest, and jail for protected speech, when combined with their refusal to acknowledge the First Amendment violation, have an ongoing chilling effect on Amyiah's speech.

**I.      Defendants Flagrantly Violated Plaintiff's First Amendment Rights**

The First Amendment prohibits government officials from "subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted). Any form of penalty for protected speech "is forbidden." *Surita v. Hyde*, 665 F.3d 860, 871 (7th Cir. 2011). This bedrock First Amendment principle applies equally to law enforcement. Officers may not cite, arrest, jail, or threaten individuals with any of the above, for engaging in protected speech. *See*, *e.g.*, *Nieves*, 139 S. Ct. at 1722 (setting forth the standard for retaliatory-arrest claims); *Steffel v. Thompson*, 415 U.S. 452 (1974) (holding that the threat of arrest is sufficient for a First Amendment claim); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009).

Plaintiffs alleging that they have been penalized for protected speech must show three things: "(1) that they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity

was at least a motivating factor in the [official's] decision." *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012); *see Nieves*, 139 S. Ct. at 1725. For retaliatory arrest claims in particular (and, presumably, claims based on a *threat* of arrest), plaintiffs must also show the absence of probable cause for the arrest. *Nieves*, 139 S. Ct. at 1724. The application of these principles to this case is straightforward and reveals a flagrant First Amendment violation.

Amyiah's Instagram posts were unquestionably speech protected by the First Amendment. As the Supreme Court has recognized, social media is, for many, the "principal source[ ] for … speaking and listening in the modern public square." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017). That is especially so during the ongoing pandemic and stay-at-home orders, when social media is one of the few avenues for communicating with loved ones. And while certain categories of speech are excluded from First Amendment protection—obscenity, defamation, true threats, inciting violence, etc.—none of those narrow exceptions apply to Amyiah's posts. *See United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality op.) (surveying the exceptions). Through her posts, Amyiah simply wished to share with her friends and family the significant scare she had with COVID-19; and such speech is presumptively protected by the First Amendment.

There is also no question that Defendants' threats of citation, arrest, and jail are a sufficient "deprivation" to violate the First Amendment. The Supreme Court has frequently recognized that "a realistic threat of arrest is enough to chill First Amendment rights," *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (listing cases); *e.g.*, *Steffel*, 415 U.S. 452, and that people need not "expose [themselves] to actual arrest or prosecution" to bring a First Amendment challenge to such threats, *Steffel*, 415 U.S. at 459.

Next, Amyiah's protected speech was clearly a "motivating factor" behind Defendants' threat of citation or arrest—in fact, it was the *entire basis* for their threats. Sergeant Klump told the Cohoons that Sheriff Konrath sent him to their home with direct orders to make Amyiah remove her posts and to cite, arrest, and jail her or her parents if she did not comply. Amyiah Cohoon Decl. ¶ 18; Rick Cohoon Decl. ¶¶ 14–15. Sergeant Klump's incident report corroborates what the Cohoons heard. It explains that Klump went to the Cohoons' home, at Sheriff Konrath's direction, to "have the post removed from [Amyiah's] social media," Compl. Ex. 5 at 4, and it notes that Klump threatened a citation for disorderly conduct and arrest if they did not comply, Compl. Ex. 5 at 5.

Finally, Defendants did not have probable cause—or come even remotely close to probable cause—to cite or arrest Amyiah or her parents for disorderly conduct. Marquette County's disorderly conduct ordinance, which is identical to the corresponding Wisconsin statute, prohibits "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance." Marquette County Ordinance § 50.03; Wis. Stat. § 947.01(1). Amyiah's Instagram posts about her experience in the hospital were in no way violent, abusive, indecent, profane, boisterous, or unreasonably loud, nor could they reasonably be characterized as "disorderly conduct … tend[ing] to cause or provoke a disturbance." Even assuming, *arguendo*, that Amyiah's posts could, somehow, fall within the catchall for "otherwise disorderly conduct," the Wisconsin Supreme Court has squarely held that the disorderly conduct statute may not be applied to protected speech. *In re Douglas D.*, 2001 WI 47, ¶ 41, 243 Wis. 2d 204, 626 N.W.2d 725.

Therefore, Defendants' threats to cite, arrest, and jail Amyiah or her parents clearly violated Amyiah's First Amendment rights.

## II. Defendants' Prior Threats and Sheriff Konrath's Refusal to Acknowledge the First Amendment Violation Continue to Inhibit Amyiah's Speech

As noted above, numerous cases have recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of a preliminary injunction. *See CLS v. Walker*, 453 F.3d at 859 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Higher Soc'y of Indiana*, 858 F.3d at 1116; *Wisconsin Right To Life*, 751 F.3d at 830; *Smith v. Exec. Dir. of Indiana War Memorials Comm'n*, 742 F.3d 282, 286 (7th Cir. 2014). And "injunctions protecting First Amendment freedoms are always in the public interest." *CLS v. Walker*, 453 F.3d at 859 (7th Cir. 2006); *Higher Soc'y of Indiana*, 858 F.3d at 1116. Thus, as long as there is an ongoing threat to Amyiah's First Amendment rights, an injunction is warranted.

Although Amyiah removed her Instagram posts, Defendants' threat to cite, arrest, and jail her or her parents if she did not remove them has had an ongoing chilling effect on Amyiah's speech. The Supreme Court has "often noted that a realistic threat of arrest is enough to chill First Amendment rights." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (listing cases); *e.g.*, *Steffel*, 415 U.S. at 458–60. But for Defendants' threats, Amyiah would like to speak further about her scare with COVID-19, in at least three different ways. First, and most importantly, Amyiah would like to respond to and correct District Administrator Meicher's statements to her peers, their families, and her teachers that her prior posts were untrue and a "foolish means to get attention." Amyiah Cohoon Decl. ¶¶ 22–24. Second, she would like to continue to update her friends and family about her recovery and discuss her experience. Amyiah Cohoon Decl. ¶ 25. Third, she would like to repost the Instagram posts Defendants made her remove. Amyiah Cohoon Decl. ¶¶ 25. Amyiah reasonably fears that, if she speaks further about her experience in these or any other ways, another deputy will show up at her home and follow

through on the prior threats. Amyiah Cohoon Decl. ¶¶ 24–27. Since she removed her original posts, Amyiah has not posted anything further about her experience. Amyiah Cohoon Decl. ¶ 27.

Sheriff Konrath has done nothing to mitigate the chilling effect on Amyiah's speech, but has instead refused to acknowledge that he and Sergeant Klump violated her First Amendment rights or to provide any assurances that she will not be cited, arrested, or jailed for similar, future speech. *See* Compl. Ex. 9. If anything, Sheriff Konrath's responses thus far have exacerbated her fears by indicating his view that her prior speech was *not* protected, but was like "screaming fire in a crowded movie theater." Compl. Ex. 9 at 1. All Sheriff Konrath has offered is confirmation that "his Department's investigation into [Amyiah's prior posts] is complete," Compl. Ex. 9 at 1, but of course, that's because *she deleted her posts* in response to their threats. The mere fact that there is no ongoing investigation into now-censored speech provides no assurance whatsoever that Defendants will not re-open an investigation if she posts anything further.

Given that Defendants' actions clearly violated Amyiah's First Amendment rights and have an ongoing chilling effect on her speech, a preliminary injunction is more than warranted here.

## CONCLUSION

Plaintiff therefore respectfully asks this Court to enter a preliminary injunction prohibiting Defendants from citing Amyiah or her parents for disorderly conduct, arresting them, jailing them, or threatening any of the above, for future speech about Amyiah's scare with COVID-19.

Dated: April 16, 2020

        Respectfully Submitted,

        WISCONSIN INSTITUTE FOR LAW & LIBERTY

        Rick Esenberg (SBN 1005622)
        (414) 727-6367 | rick@will-law.org

- 13 -
Case 2:20-cv-00620-JPS   Filed 04/16/20   Page 15 of 16   Document 3-1

/s/ Luke N. Berg
Luke N. Berg (SBN 1095644)
(414) 727-7361 | luke@will-law.org

Anthony F. LoCoco (SBN 1101773)
(414) 727-7419 | alococo@will-law.org

Lucas T. Vebber (SBN 1067543)
(414) 727-7415 | lucas@will-law.org

330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455

Attorneys for Plaintiff