IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

AMYIAH COHOON, a minor,
by and through her parents,
Richard Cohoon and Angela Cohoon,

    Plaintiff,

v.

                                                          Case No. 2:20-CV-620-JPS

JOSEPH KONRATH and CAMERON KLUMP,

    Defendants.

## **DECLARATION OF PATROL SERGEANT CAMERON KLUMP**

STATE OF WISCONSIN    )
                                  ) ss.
MARQUETTE COUNTY    )

    I, PATROL SERGEANT CAMERON KLUMP, being first duly sworn upon oath, deposes and states as follows:

    1.    I am a Patrol Sergeant with the Marquette County Sheriff's Department. I have been employed with the Marquette Sheriff's Department for the last 8 years. I base this Declaration on my personal knowledge and review of various Marquette County documents, including my report and the squad audio and video recording from the incident on March 27, 2020.

    2.    On March 27, 2020, I was on duty as a Patrol Sergeant, working 3 p.m. to 3 a.m. I was operating a fully marked squad car which was equipped with a squad audio and video recording device. I reviewed this video and audio recording for purposes of preparing this

declaration. I did not nor did I have the ability to modify the video and audio recording which was created on March 27, 2020. It is my understanding that this squad audio and video recording was uploaded and saved by the Marquette County Sheriff's Department.

3. On March 27, 2020, at approximately 1821 hours, I was advised by the Marquette County dispatch center to make contact with Sheriff Joseph Konrath about a complaint he wanted investigated.

4. I made contact with Sheriff Konrath who advised he had been contacted by the Marquette County Health Department regarding a social media post made by Ms. Amyiah Cohoon. In this post, Ms. Amyiah Cohoon stated she had beat COVID-19, but the Marquette County Health Department relayed she had actually tested negative for COVID-19. Since Ms. Amyiah Cohoon had actually tested negative for COVID-19, I was informed this post was false and it was causing a community disturbance, unfounded concern and panic with parents within the Westfield School District and others in the community, as Ms. Amyiah Cohoon had recently been on a band trip with other Westfield High School students and chaperones, which included dozens of Marquette County residents. Sheriff Konrath did forward me a copy of the social media post made by Ms. Amyiah Cohoon. Attached as Exhibit 3, is a true and correct copy of the social media post sent to me by Sheriff Konrath.

5. Sheriff Konrath asked me to respond to the Cohoon residence, make contact with the Cohoon family and to inquire whether Ms. Amyiah Cohoon would voluntarily remove the social media post stating that she had beat COVID-19. I did discuss with Sheriff Konrath a variety of options for handling the situation if Ms. Amyiah Cohoon refused to remove it voluntarily. If Ms. Amyiah Cohoon did not remove the post voluntarily, the plan was to contact the Sheriff to discuss the situation before taking any further action.

6. On March 27, 2020, at approximately 1856 hours, I arrived at the Cohoon residence located at 207 Fran Court, in the Village of Oxford.

7. My contact with the Cohoon family on March 27, 2020 was captured by my squad audio and video recording device, which has been preserved by the Marquette County Sheriff's Department. This audio/video recording accurately portrays the law enforcement contact I had with the Cohoons on March 27, 2020. The squad video portion of the recording device automatically records activity in front of the squad vehicle. Each Deputy has the capability of turning on an audio mic pack, which is located on a Deputy's shoulder or belt area. I turned on my audio mic shortly after I started speaking with Mr. Cohoon at his residence. On this video recording, I am wearing a Sheriff's Department Uniform and I remained outside of the residence, standing in front of a vehicle. While I cannot be seen on the video recording at all times based on where I was standing, the statements I made, along with the conversation I had with Mr. Cohoon, Mrs. Cohoon and Ms. Amyiah Cohoon, were captured on the audio recording. The video recording depicts an adult male, who I knew to be Mr. Cohoon, Ms. Amyiah Cohoon's father. Ms. Amyiah Cohoon and her mother, Mrs. Angela Cohoon, are also seen during various portions of the video recording. The video recording is 30:52 minutes long and also contains a date and running time stamp located on the top portion of the recording.

8. At approximately 18:58:27 (00.25 video time), I knocked on the front door of the Cohoon residence and a female who I knew to be Ms. Amyiah Cohoon, answered it. I requested to speak to her father who I also knew from prior police contacts.

9. Mr. Richard Cohoon came to the door and then stepped outside to speak with me, closing the front door behind him. Ms. Amyiah Cohoon initially remained in the home while I spoke with her father outside.

10. I initially asked Mr. Cohoon questions about his daughter, Ms. Amyiah Cohoon, her school trip and about whether she thought she had COVID-19 and whether she got tested.

11. Mr. Cohoon began to explain Ms. Amyiah Cohoon's hospital course and offered to show me a copy of records from Ms. Amyiah Cohoon's emergency room visit on March 22, 2020. Mr. Cohoon then stepped into the home briefly, presumably to ask Mrs. Cohoon to bring the record outside and then re-emerged from the house and indicated that Mrs. Cohoon will bring the hospital record.

12. At approximately 19.00:41 (2:40 video time), when Mrs. Cohoon provided me with a Divine Savior record from March 22, 2020, I reviewed it. When provided these records by the Cohoons, I never stated anything remotely similar to the allegation that I stated I "was not there to gather information, just to complete Sheriff Konrath's orders."

13. Mr. Cohoon described to me Ms. Amyiah Cohoon's medical history over the course of the last week. This included information which confirmed Ms. Amyiah Cohoon had been tested for COVID-19 at the UW Children's Hospital on March 25, 2020 and the test was negative. At approximately 19.01:40-19:01:46 (3:38-3:45 video time), Mr. Cohoon confirmed that the COVID-19 test for Ms. Amyiah Cohoon came back negative on the morning of March 26, 2020. Mr. Cohoon confirmed the negative test a second time at approximately 19.02:28-19:02:33 (4:27- 4:31 video time).

14. At approximately 19:02:51 (4:50 video time), for the first time, I explained the reason I was there was to discuss Ms. Amyiah Cohoon's social media post, which at that time was believed to have been posted on Facebook, where she stated she had "beaten COVID-19," but had in fact tested negative. At approximately 19:04:11 (6:10 video time), I relayed to Mr.

and Mrs. Cohoon that this post was causing many issues with students and parents within the school district. I did show Mr. Cohoon the post I had received via email from the Sheriff.

15. I was under the belief that this social media post made by Ms. Amyiah Cohoon that she was recovering from COVID-19 was made on Facebook. I later was informed by Ms. Amyiah Cohoon and her family that she did not have Facebook but that the post had actually been made on Ms. Amyiah Cohoon's Instagram account.

16. I explained to Mr. and Mrs. Cohoon the concern over the social media post within the community in that parents were calling school about COVID-19. At approximately 19:05:11 (7:10 video time), I also explained to Mr. Cohoon and Mrs. Cohoon that Sheriff Konrath had been contacted by the Marquette County Health Department requesting that the Sheriff's Department make contact with the Cohoon family and talk to Ms. Amyiah Cohoon to see if she would delete her post. At approximately 19:05:24 (7:23 video time), Mrs. Cohoon then responded "okay" which I interpreted as her agreement to take the post down, though I understood that Mrs. Cohoon may not have been speaking for her daughter, who appeared to have actually authored the post.

17. At approximately 19:07:05 (9:04 video time), Ms. Amyiah Cohoon stepped outside of the residence for the first time. I explained to the Cohoon family that all I was there for was to figure out what the post was about, seeing that Ms. Amyiah Cohoon tested negative and to see if she would take the post down. At approximately 19:07:49 (9:48 video time), in response to my statement, Ms. Amyiah Cohoon immediately responded by saying "I'll do it." I took Ms. Amyiah Cohoon's statement to be a voluntary willingness to delete the Instagram post.

18. At approximately 19:08:24 (10:23 video time), I then spoke directly to Ms. Amyiah Cohoon further explaining the situation for why I was there. I informed Ms. Amyiah

Cohoon that I was there because of her recent social media post and with her being in Florida with other parents and students there was concern about her stating she had COVID-19 and that these parents and students were never notified.

19. Mr. Cohoon seemed to be upset with the medical process and its inconsistencies. After additional conversation about Ms. Amyiah Cohoon's medical course this past week, at approximately 19:10:16 (12:15 video time), I stated: "Nonetheless, can we get the post taken down?" In response to my question, both Ms. Amyiah Cohoon and Mrs. Cohoon immediately agreed to take down the post, by stating "yes." Again, I took Ms. Amyiah Cohoon's additional statement to express a voluntary willingness to delete the Instagram post.

20. Up through the point in time that Ms. Amyiah Cohoon twice indicated an agreement that she would remove the Instagram post, I never suggested, insinuated or threatened that anyone could face arrest or any other adverse law enforcement action if there was not an agreement to remove the Instagram post.

21. At approximately 19:10:47 (12:45 video time), Ms. Amyiah Cohoon then walked inside of the residence, outside of my presence and closed the door behind her.

22. While Ms. Amyiah Cohoon was outside of my presence and after Ms. Amyiah Cohoon already twice indicated that she would remove the Instagram post, at approximately 19:10:48 (12:47 video time), I did state to Mr. Cohoon: "Richard, I don't want to go this far, it was as simple as me coming out here and just getting the post taken down and walking away." After Ms. Amyiah Cohoon agreed to take down the post and while Ms. Amyiah Cohoon was inside of her home, presumably to take down the post, I did tell Mr. Cohoon the potential for disorderly conduct due to the fact that the post was causing a disturbance to the public by posting that their daughter was positive for COVID-19 and the other parents were upset over this post.

23. When I made statements about the potential for disorderly conduct and arrest, this was after Ms. Amyiah Cohoon had already twice agreed to remove the social media post. In addition, when I made these statements about disorderly conduct and arrest, Ms. Amyiah Cohoon was not present, but rather, was inside the home with the door closed.

24. I did not have a plan to immediately issue any citations or make any referrals for disorderly conduct or arrests at that time, even if Ms. Amyiah Cohoon would not agree to voluntarily remove the posts. I had previously discussed with Sheriff Konrath that there were a wide range of options if Ms. Amyiah Cohoon refused to voluntarily remove the post. While this potentially included disorderly conduct, it also included working with the County Health Department to take other actions or potentially contacting Facebook (again, at the point of my discusison with the Sheriff, we both believed this to be a Facebook post). If Ms. Amyiah Cohoon refused to take the social media post down, I would have further evaluated the situation and discussed the situation with Sheriff Konrath before proceeding with any of the options, including issuance of disorderly conduct citations or arrest for disorderly conduct.

25. At approximately 19:11:25 (13:25 video time), Mrs. Cohoon partially entered the home, presumably to check with Ms. Amyiah Cohoon and then Mrs. Cohoon stated "she [Ms. Cohoon] is taking it down now."

26. At approximately 19:18:02 (20:00 video time), I then asked Mr. Cohoon if Ms. Amyiah Cohoon could bring her phone out to show me that the post was removed. Mr. Cohoon entered the residence and at approximately 19:18:12 (20:10 video time), yelled for "Amyiah" from within the home. After yelling for "Amyiah," Mr. Cohoon started to open the front door to return outside approximately 15 seconds later.

27. Mr. Cohoon re-emerged from the residence at approximately 19:18:27 (20:25 video time) and stated that if the post was not there anymore, it should not show up on my phone. I got the impression that Mr. Cohoon had believed and expected that the post was already removed but suggested to me that I look at my phone. I explained to Mr. Cohoon that I only had a screenshot of the post. Mr. Cohoon then appeared to obtain his own phone to check to verify that the post was removed.

28. At approximately 19:18:40 (20:38 video time), Mr. Cohoon stated to me: "I kinda understand where you are coming from, like I said, we are failing to understand each other."

29. At approximately 19:18:44 (20:43 video time), Ms. Amyiah Cohoon re-emerged from the house with her phone in hand. Ms. Amyiah Cohoon reported to me that the social media post had been completely taken down. Ms. Amyiah Cohoon then proceeded to show me her phone confirming that the post had been deleted.

30. At approximately 19:19:22 (21:21 video time), I told Ms. Amyiah Cohoon that I appreciated her taking the social media post down and she responded "of course."

31. At no time did I ever state or threaten Ms. Amiah Cohoon that if she did not take down the social media post, I would arrest her or issue her a disorderly conduct citation. In fact, I never made any threat or other statements to Ms. Amyiah Cohoon or in her presence that suggested or referenced arrest or disorderly conduct.

32. I never told Ms. Amyiah Cohoon that if she did not remove the social media post, I had direct orders from the Sheriff to issue citations for disorderly conduct and taking people to jail.

33. At no time did Mr. Cohoon bring Ms. Amyiah Cohoon outside and explain to Ms. Amyiah Cohoon that she did not have to delete her post, that he would not delete it if it were his post but that she could decide for herself.

34. While I showed Ms. Amyiah Cohoon the screenshot of her post, I never told her that if she did not remove it, I had orders to begin issuing citations and taking people to jail.

35. All of my interactions with the Cohoon family on March 27, 2020 were professional. I neither raised my voice nor ever threatened Ms. Amyiah Cohoon with arrest.

36. It was my intention to speak with Ms. Amyiah Cohoon to explain the negative impact her post was having with the hope that she would voluntarily remove the post as requested by the County's Health Department. I had significant concerns over this social media post which was already causing an unfounded concern, a disturbance and panic with parents, students, the County Health Department and other County residents and could continue to cause further panic in the community.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of April, 2020.

s/ Cameron Klump
PATROL SERGEANT CAMERON KLUMP