IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMYIAH COHOON, a minor,
by and through her parents,
Richard Cohoon and Angela Cohoon,

    Plaintiff,

v.

                                           Case No. 2:20-CV-620-JPS

JOSEPH KONRATH and CAMERON KLUMP,

    Defendants.

## DECLARATION OF JAMIE L. POPP

STATE OF WISCONSIN    )
                                ) ss.
MARQUETTE COUNTY    )

    I, JAMIE L. POPP, being first duly sworn upon oath, depose and state as follows:

    1.    I am the mother of T.P, who was a Freshman at Westfield Area High School in March of 2020. I am also a registered nurse, licensed in the State of Wisconsin. I base this Declaration on my personal knowledge.

    2.    My son, T.P., attended a school sponsored trip to Orlando, Florida from March 7, 2020 until March 15, 2020 as a member of the Westfield Area High School marching band.

    3.    Ms. Amyiah Cohoon, also attended this school sponsored marching band trip. I know that T.P. is acquainted with Ms. Amyiah Cohoon from playing together in the marching band.

1

4. My husband, Adam Popp and I also traveled to Orlando, Florida from March 9, 2020 until March 12, 2020 to watch T.P. and his classmates perform at Disney World and Universal Studios.

5. During the Orlando trip, I know that T.P. and Ms. Amyiah Cohoon stayed in the same hotel, rode on the same bus and were generally within close proximity of each other, as were virtually all members of the Westfield Area High School marching band, parent chaperones, and school faculty and staff who attended the trip.

6. While on the Orlando trip, the Governors of both Florida and Wisconsin declared states of emergency related to the current COVID-19 public health crisis. In Florida, this state of emergency caused the Universal Studios theme park and the Disney World theme parks to be closed on March 12, 2020 and March 15, 2020 respectively. This state of emergency also caused T.P. and his classmates to return to Wisconsin earlier than was initially planned.

7. Approximately one week after T.P. returned from the trip to Orlando, Florida, he called me at work to report that he saw a recent social media post from Ms. Amyiah Cohoon's Instagram account in which she indicated that she had been diagnosed with COVID-19. T.P. told me that in this social media post, Ms. Amyiah Cohoon stated as follows: "

> Hey guys. . . sorry I've been on a long break.. [sic] I won't be back for a whole longer due to me noe [sic] having the COVID-19 virus . . .I don't want the attention its just the truth . . . I am now in self quarantine and am not allowrd {sic} to leave my room and have an inhaler since they said to go home . . .best of wishes. I love you guys

8. During this phone call, T.P. was panicked, scared, and worried that he would also come down with COVID-19 because of his close proximity to Ms. Cohoon and to the other members of the Westfield Area High School marching band who had also been in close proximity to Ms. Amyiah Cohoon.

9. After receiving this information from T.P., my husband and I discussed whether T.P. would need to be tested for COVID-19. Both my husband and I were on pins and needles, concerned for not only T.P.'s safety, but for the safety of our other family members, including our five grandchildren as well.

10. After careful consideration and discussion, my husband and I decided that we would closely monitor T.P. for COVID-19 related symptoms, and if he demonstrated any cause for concern, we would pursue testing and medical treatment for COVID-19. I regularly took T.P.'s temperature, and I vigilantly monitored him for symptoms commonly associated with COVID-19 fearing that he would come down with this very dangerous and contagious illness. This was especially trying for T.P. and all members of our family, as we scrutinized every sneeze, cough, sore throat, or other symptom that any family member presented.

11. In addition to my concerns about T.P. and the rest of my family, I was also especially worried about my professional obligations. If T.P. was exposed to someone who truly did test positive for COVID-19, then given my close proximity to him, I would have been required to stay home from work for at least two weeks. I am fearful that my co-workers and patients would have suffered from my absence from work, and this fear caused me further uneasiness and anxiety.

12. This entire ordeal was a significant disturbance and disruption to our regular family life.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

        Executed 24th day of April, 2020.

        s/ Jamie L. Popp
        JAMIE L. POPP