UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMYIAH COHOON, a minor, by and through her parents and legal guardians, RICHARD COHOON and ANGELA COHOON,

    Plaintiff,

v.

Case No. 20-CV-620

JOSEPH KONRATH, in his personal and official capacity as Sheriff of Marquette County, Wisconsin, and

CAMERON KLUMP, in his personal and official capacity as Patrol Sergeant for the Marquette County Sheriff's Office,

    Defendants

**PLAINTIFF'S REPLY BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Rick Esenberg (SBN 1005622)
Luke N. Berg (SBN 1095644)
  *Counsel of Record*
Anthony F. LoCoco (SBN 1101773)
Lucas T. Vebber (SBN 1067543)

Wisconsin Institute for Law & Liberty
330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
Phone: (414) 727-7361
Fax: (414) 727-6385
luke@will-law.org

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................... 1

    I.   Defendants' Concessions Alone Defeat Their Primary Defense ......................... 1

    II.  Amyiah's Instagram Posts Did Not Even Arguably Create Probable Cause for a Disorderly Conduct Citation ................................................................................. 5

    III. Sheriff Konrath's Post-Hoc Justification That He Never Intended His Deputy to Issue a Threat or Demand Is Directly Refuted by Multiple Things Defendants Themselves Have Said and Done ....................................................................... 6

    IV. Even If Qualified Immunity Applies to Plaintiff's Claims for Retrospective Relief, Plaintiff Is Entitled to Either an Injunction or a Declaratory Judgment .............. 8

CONCLUSION ................................................................................................................. 9

# ARGUMENT

## I. Defendants' Concessions Alone Defeat Their Primary Defense

Defendants' concessions in this case not only show that their primary defense is irrelevant, they all but establish a straightforward First Amendment violation. There are only three basic elements to a First Amendment retaliation claim: (1) protected speech; (2) retaliation against that speech (Defendants concede that a threat of arrest and jail is sufficient, Dkt. 34:7–8), and (3) causation (both that the retaliation was motivated by the protected speech, and that the retaliation caused injury). *Nieves v. Bartlett,* 139 S. Ct. 1715, 1722, (2019); *see also Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). For retaliatory arrest claims, plaintiffs must also show the absence of probable cause. *Nieves*, 139 S. Ct. at 1724. Defendants' concessions alone establish all but the absence of probable cause.

Defendants concede by silence that Amyiah was exercising her First Amendment rights when she posted on Instagram about her scare with what doctors told her was likely COVID-19. *See* Dkt. 29:10. Defendants also do not dispute—because there is video evidence—that Sergeant Klump came to Amyiah's home at Sheriff Konrath's direction and, while he was there, told Amyiah's parents that "if [Amyiah's post] doesn't come down, the Sheriff has directed me to issue disorderly conduct citations if not start taking people to jail." Dkt. 35, ¶ 47. This video-recorded statement establishes both retaliation and that the retaliation was motivated by Amyiah's post. Finally, Defendants do not dispute that Amyiah became aware of this threat shortly after it was made, and that this threat both caused Amyiah to delete one of her Instagram posts, Dkt. 35, ¶ 53, and prevented her from responding on social media when the administrator of her school district publicly accused her of making the whole thing up, Dkt. 35, ¶¶ 54–59. This concession establishes that Sergeant Klump's threat caused injury to Amyiah's First Amendment rights.

Defendants' primary (and almost entire) defense is that Sergeant Klump's threat did not cause Amyiah to delete her *second* Instagram post. That is wrong or irrelevant for a variety of reasons, *see* Dkt. 29:10–14, the simplest of which, given Defendants' concessions, is that Sergeant Klump's threat *did* cause Amyiah to delete her *first* Instagram post, and subsequently caused her to self-censor her speech, both of which are more than sufficient injuries to Amyiah's First Amendment rights. Dkt. 35, ¶ 53–59; *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) ("The Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights.") (listing cases). For that reason alone, Defendants' main defense is entirely beside the point.[1]

Even as to Amyiah's *other* Instagram post, the video shows that Sergeant Klump's threat did in fact play a causal role in Amyiah deleting her post: her father stood up for her First Amendment rights on her behalf and did not back down until Sergeant Klump threatened to arrest or jail the Cohoons, and Amyiah did not actually remove her post until well after her father acquiesced in the face of Sergeant Klump's threat. Dkt. 29:12–13.

But even putting that point aside as well, a demand from a law enforcement officer outside one's home to remove protected speech, especially when accompanied by an implicit threat of enforcement, is itself a clear First Amendment violation. Dkt. 29:11–12; *e.g.*, *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("[F]reedom of speech … [is] protected against *censorship or*

---

[1] Defendants' arguments on qualified immunity fail for the same reason. Defendants concede that it is clearly established that law enforcement officers may not threaten citation or arrest for protected speech, *see* Dkt. 29:18–19, and that Sergeant Klump did, in fact, threaten citation or arrest for protected speech, Dkt. 35, ¶ 47 ("[I]f [Amyiah's post] doesn't come down, the Sheriff has directed me to issue disorderly conduct citations if not start taking people to jail.") Whether that threat *caused* injury to Amyiah's First Amendment rights is a *factual* question, not a question of clearly established law, and, moreover, Defendants have conceded the factual point. Dkt. 35, ¶ 53–59.

punishment.") (emphasis added); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("The Constitution prevents governmental actors from *forbidding*, *or* penalizing, speech that is protected under the First Amendment.") (emphasis added). Defendants spend a great deal of energy distinguishing the cases Plaintiff cited for the basic proposition that government officials may not command a person to cease protected speech, Dkt. 34:3–6, 14–16, but none of these distinctions matter, either to the merits or to qualified immunity. The important and relatively simple point is that government officials may not "forbid" or "censor" protected speech, and this has long been clearly established. *Terminiello*, 337 U.S. at 4; *Fairley*, 578 F.3d at 525. Whether a particular officer made a request or issued a demand is a factual question, not a question of clearly established law, and the video recording clearly shows that Sergeant Klump issued a demand backed by an implicit (and later explicit) threat. Video at 9:35–9:48 ("[W]e need to get it taken down").

Defendants object that the "mere presence" of an officer is not sufficiently coercive for a First Amendment violation. Dkt. 34:7. That is not the issue. If Sergeant Klump had communicated to the Cohoons that he was simply making a voluntary request and that they had a right to decline that request, this case would not be here. He did not do that. Instead, both his words and actions communicated to Amyiah and her parents that he was issuing a demand, *e.g.* Video at 9:35–9:48 ("We need to get it taken down."), and that his demand carried an implicit threat of enforcement, *e.g.*, Video at 12:17–26 (Rick objecting, in Amyiah's presence, before she deleted her post, "What has been violated here lawfully?" and Klump responding, "Because the health department has the information of her test results, that she is not positive."). And the implicit threat quickly became explicit, so Defendants cannot now argue that it was unreasonable for Amyiah (a sixteen-year-old) to correctly take Sergeant's Klump implicit threat for what it actually was.

For this reason, Defendants' heavy reliance on *Black v. Clarke*, 285 F. Supp. 3d 1070 (E.D. Wis. 2018) is entirely misplaced. That case did not involve any demand by an officer to delete protected speech from social media; the main question was whether a short interview with police at an airport was sufficiently coercive to deter speech. Again, if Sergeant Klump had simply asked questions, there would be no First Amendment problem. Instead, he made an unlawful demand and reinforced that demand with both implicit and explicit threats.

In response to Plaintiff's argument that Sergeant Klump's demand and implicit threat was itself a First Amendment violation, Defendants argue that Plaintiff has "shift[ed] her theory of liability," but that is both untrue and irrelevant. Plaintiff's claim has always been that Defendants violated her First Amendment rights by demanding that she delete a social media post and then threatening to arrest her or her family if she did not. *See* Dkt. 3-1:1 ("The Sheriff's demand was a blatant First Amendment violation."). In any event, whether Plaintiff's First Amendment claim is best categorized as a "retaliation" or "censorship" claim is not what matters, they are two sides of the same coin. There is, after all, only one First Amendment, which prohibits any form of "abridg[ement]" of speech. The Seventh Circuit has explained that the word "retaliation" in the First Amendment context "can be misleading" if it "divert[s] attention from the rule that both threats designed to deter future speech and penalties for past speech are forbidden." *Fairley*, 578 F.3d at 525. Defendants' arguments about how to categorize Amyiah's First Amendment claim are exactly that—a diversion from the important point that the "[t]he Constitution prevents governmental actors from *forbidding*, *or* penalizing, speech that is protected." *Id*. (emphasis added). Defendants violated Amyiah's First Amendment rights both by demanding that she delete her post (with an implicit threat), and then by openly threatening to take "people" to jail if she did not. Dkt. 35, ¶ 47.

### II. Amyiah's Instagram Posts Did Not Even Arguably Create Probable Cause for a Disorderly Conduct Citation

Defendants' only other defense is that they had "arguable" probable cause for disorderly conduct. Dkt. 34:10–14, 16–17. Yet Defendants still have no persuasive response to the Wisconsin Supreme Court's clear holding that the disorderly conduct statute may not be applied to First Amendment protected speech. *In re Douglas D.*, 2001 WI 47, ¶ 21, 243 Wis. 2d 204, 626 N.W.2d 725. The Wisconsin Supreme Court in *Douglas D.* found speech far more threatening than Amyiah's to be protected and therefore outside the scope of the disorderly conduct statute (an implicit threat from a student to decapitate his teacher), and the United States Supreme Court in *Terminiello* found speech causing a much greater disturbance to be protected and therefore immune from a disorderly conduct charge ("vicious[ ] critic[ism] [of] various political and racial groups," causing an "angry and turbulent" crowd of a thousand persons to protest outside), *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). The disorderly conduct statute at issue in *Terminiello* violated the First Amendment because it applied to speech that merely "brought about a condition of unrest." 337 U.S. at 5. Speech may not be punished as disorderly conduct, the Court explained, unless it "is shown likely to produce a clear and present danger of a serious substantive evil that rises *far above public inconvenience, annoyance, or unrest*." *Id*. at 4 (emphasis added). Defendants have not shown that they had any reason to believe Amyiah's speech rose to that level.

Nevertheless, even if, for the sake of argument, Sergeant Klump had probable cause for a disorderly conduct citation when he first arrived at the Cohoons' home, he did not have probable cause *when* he issued his demands and threats. Probable cause depends on the facts known to the officer at the time, which can change moment by moment. *See Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1060 (7th Cir. 2004). Defendants' entire claimed basis for probable cause was that Amyiah's post was inaccurate (certainly it is not disorderly conduct to post truthfully

about one's medical issues) but their only basis for that belief was her negative test result. Dkt. 34:14.

Amyiah's father attempted to explain to Sergeant Klump—at least six different times, four times before the threat—that the doctors who treated Amyiah believed and told them that she may still have COVID-19, notwithstanding the negative test result. Dkt 29:5–8, 15–16. Sergeant Klump acknowledged, as captured on video, that he had no basis to dispute what Amyiah's father told him. Video at 9:35–9:38 ("I don't know the circumstances that you were in."). So, even *if* Sergeant Klump had "arguable probable cause" for disorderly conduct when he first arrived at the Cohoons' home (and for the reasons explained above, he did not), he certainly did not have probable cause once he received the Cohoons' explanation of what the doctors told them, which he had no basis to question.

### III. Sheriff Konrath's Post-Hoc Justification That He Never Intended His Deputy to Issue a Threat or Demand Is Directly Refuted by Multiple Things Defendants Themselves Have Said and Done, and, in Any Event, Is Irrelevant

Sheriff Konrath is liable for the First Amendment violation both in his individual capacity and in his official capacity as Sheriff under *Monell*, and the *Monell* claim applies even if Defendants were entitled to qualified immunity for the individual capacity claims, which they are not. *See supra* p. 2 n. 1, 3. Defendants do not dispute that a "Sheriff's decisions … with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability" under *Monell*. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n. 12 (1986). Instead, Sheriff Konrath claims that he did not actually intend or direct Sergeant Klump to *immediately* issue a threat. Dkt. 34:17–18. He admits that he discussed a disorderly conduct citation with Sergeant Klump, but says he meant for Sergeant Klump to call him back if the

Cohoons refused to take the post down. *See* Dkt. 19 ¶¶ 10–11. Sheriff Konrath then asserts that his story is "undisputed," Dkt. 34:18–19, but that is simply not true. *See* Dkt. 33, ¶ 98.

In fact, everything Defendants said and did prior to litigation, all of which is either contemporaneous with or much closer to the incident, contradicts Sheriff Konrath's current story. First, Sergeant Klump told the Cohoons, as captured on video, that "the Sheriff has directed me to issue disorderly conduct citations if not start taking people to jail." Video at 12:58–13:04. Second, Sergeant Klump's incident report states that Sheriff Konrath told him to "respond to the residence and have the post removed from her social media" (not *request* that it be removed) and notes that he threatened citation and arrest while he was there, Dkt. 30, Ex. 6 at 4–5. Sergeant Klump asked Sheriff Konrath to review his report, and Sheriff Konrath responded in an email that it was "accurate and to the point," without any suggestion that Sergeant Klump's actions were a deviation from his orders. Dkt. 30, Ex. 11. Third, before filing this lawsuit, the Cohoons sent Sheriff Konrath a letter stating that Sergeant Klump had threatened them and told them he was "acting on [the Sheriff's] direct orders," and asking Sheriff Konrath to explain if "anything contained in this letter is inaccurate." Dkt. 30, Ex. 8. Sheriff Konrath did not, at any point prior to litigation, indicate that his deputy officer had violated his orders or that his true intention was a voluntary request; instead, he asserted that Amyiah's speech was unprotected. Dkt. 30, Ex. 9.[2] Thus, this Court should not give any credit to Sheriff Konrath's post-hoc explanation for purposes of this litigation.

---

[2] Defendants argue that this exchange is inadmissible under Rule 408, but they are wrong for multiple reasons. First, Rule 408 applies to admissions during "compromise negotiations." Plaintiff sent Sheriff Konrath a letter prior to filing to allow him to explain and to avoid litigation if there was some mitigating explanation. Sheriff Konrath refused to acknowledge anything or to provide any explanation; so there was no admission or, for that matter, any "compromise negotiation." Second, even if this type of exchange were covered by Rule 408, the Rule explicitly allows such evidence for "another purpose," including showing "intent." Fed. R. Evid. 408(b); *see Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 540 (7th Cir. 2017); *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005). Plaintiff

- 7 -
Case 2:20-cv-00620-JPS   Filed 06/12/20   Page 9 of 11   Document 36

But even if Sheriff Konrath's story were true, that is irrelevant, for a number of reasons. First, he admits that he sent his deputy to the Cohoons' home to have a teenager's social media post taken down, which, for the reasons explained above, is itself a First Amendment violation. Second, after the incident, and knowing that his deputy had threatened the Cohoons, Dkt. 30, Exs. 6, 11, he refused to disavow the threat or provide any assurance that the Cohoons would not have another deputy at their door if Amyiah posted further about her experience, Dkt. 30 Ex. 9. Sheriff Konrath is the head of the Marquette County Sheriff's Office, and his intransigence effectively ratified the threat and further chilled Amyiah's speech, which is also a First Amendment violation. *See Hodgkins*, 355 F.3d 1048, 1056 (7th Cir. 2004) ("The Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights."). Thus, at the very least, Plaintiff is entitled to *prospective* relief against Sheriff Konrath. *See infra* Part IV.

## IV. Even If Qualified Immunity Applies to Plaintiff's Claims for Retrospective Relief, Plaintiff Is Entitled to Either an Injunction or a Declaratory Judgment

As explained thoroughly in Plaintiff's other filings, Plaintiff is entitled to some form of prospective relief because Defendants' threat—which they still refuse to acknowledge was a First Amendment violation—has cast a shadow on her speech on social media. Dkt. 29:16–18; *see Denius v. Dunlap*, 330 F.3d 919, 928 (7th Cir. 2003) (qualified immunity does not apply to declaratory and injunctive relief).

Defendants' only responses are internally self-contradictory. On the one hand, Defendants assert that a declaratory judgment is unnecessary because it would be redundant with an injunction. Dkt. 34:20 ("Where a party has already filed suit to enforce its claim that a defendant has violated its rights, a declaratory judgment would serve no useful purpose."). But in the very next sentence,

---

cites this evidence because it contradicts Sheriff Konrath's assertion that he never intended a demand or threat; if that were true, he could have said so in response to the Cohoons' letter.

Defendants argue that an *injunction* is unnecessary because a declaratory judgment would be sufficient. Dkt. 34:20 ("a declaratory judgment … provides adequate prospective relief and an injunction … is at best unnecessary."). Defendants cannot have it both ways. Whether an injunction or declaratory judgment, Plaintiff is entitled to some form of prospective relief to restore her First Amendment rights.

## CONCLUSION

Accordingly, Plaintiff respectfully requests that this Court enter summary judgment against the Defendants.

Dated: June 12, 2020

Respectfully Submitted,

WISCONSIN INSTITUTE FOR LAW & LIBERTY

Rick Esenberg (SBN 1005622)
(414) 727-6367 | rick@will-law.org

/s/ Luke N. Berg
Luke N. Berg (SBN 1095644)
(414) 727-7361 | luke@will-law.org

Anthony F. LoCoco (SBN 1101773)
(414) 727-7419 | alococo@will-law.org

Lucas T. Vebber (SBN 1067543)
(414) 727-7415 | lucas@will-law.org

330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455

Attorneys for Plaintiff